IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JEFFREY BULFORD,

   Plaintiff,

    v.

VERIZON BUSINESS NETWORK
SERVICES, INC.,

   Defendant.

CIVIL ACTION FILE
NO. 1:12-CV-3753-TWT

OPINION AND ORDER

This is an action for breach of contract and fraud arising out of the termination of the Plaintiff's employment. It is before the Court on the Defendant's Motion to Dismiss the Plaintiff's Amended Complaint [Doc. 9]. For the reasons set forth below, the Defendant's Motion to Dismiss the Plaintiff's Amended Complaint [Doc. 9] is GRANTED.

I. Background

The Plaintiff began working for the Defendant Verizon Business Network Services, Inc. as a Senior Global Account Manager in 2006. On December 9, 2010, the Defendant notified the Plaintiff that his employment with Verizon would be terminated as of January 7, 2011. (Am. Compl. ¶ 15.) The Defendant sent the

Plaintiff a Separation Agreement. (Am. Compl. ¶ 16.) The purpose of this agreement was to comprehensively spell out the rights and obligations of the various parties relating to the Plaintiff's employment and his termination. (Am. Compl. Ex. A at 9.) The Separation Agreement informed the Plaintiff that he ought to consult an attorney prior to signing it. (Am. Compl. Ex. A at 5.)

There are three primary sections to the Separation Agreement. First, the Separation Agreement includes provisions detailing what the Plaintiff is entitled to ("Entitlement Section"):

> 2. I am voluntarily signing this document . . . in exchange for:
> (a) A severance payment ("Severance Payment") in the amount of **$29,430.26** (less applicable withholding taxes) under the Verizon Severance Program for Management Employees ("the Severance Plan");
> . . .
> (c) If I participate in a Verizon short-term incentive plan, and separate from employment before the end of the plan year, a prorated incentive award payment, at the time of separation, according to the terms of the applicable plan. I understand that my prorated award, if I am eligible to receive it, will be in the amount of **$0.00**. I understand that I am not guaranteed to receive any incentive award payment under the applicable short-term incentive plan. In addition, I understand and acknowledge that other than this prorated award, I am not eligible for any other short-term incentive or similar award for the plan year in which I separate from the payroll.
> . . .
> 6. I agree that I have no right to receive any separation benefits or compensation other than the benefits and compensation described in paragraph 2 of this Release.
> 7. . . .I understand that the compensation and benefits described above are the only separation or severance compensation and benefits for which

> I am eligible, and I have no right to receive any other separation or severance benefits under any other plans or practices.

(Am. Compl. Ex. A at 4.)  Second, the Separation Agreement includes a release whereby the Plaintiff forfeits all claims that he had against Verizon based on any event that occurred prior to the Plaintiff's signing of the Separation Agreement ("Claim Release"):

> (a) I waive, release and forever give up any claim I may have against Verizon . . .. This release applies only to claims based on *any event that has occurred before I sign this Release.* I am releasing and giving up claims I now know about and those I may not know about. This includes all obligations, claims, or causes of action of any kind, whether in tort, *by contract* . . . for equitable relief, compensatory, punitive or other damages, attorneys' fees, costs or expenses. This includes . . . claims under . . . any state law.
>
> (b) I waive and give up the right to any remedy or recovery in any proceeding which may be brought against the Releasees on my behalf or otherwise . . . *related to my employment* or my termination of employment, or any related events or circumstances.

(Am. Compl. Ex. A at 5-6.) (emphasis added).  Third, the Separation Agreement includes a comprehensive merger clause ("Merger Clause"):

> This Release is the entire agreement between the Company and me relating to my employment and my separation from employment, and my entitlement to any benefits relating to my employment and my separation from employment. No promises or representations have been made to me other than those in this Release. In deciding to sign this Release, I have not relied on any statement by anyone associated with Verizon that is not contained in this Release.

(Am. Compl. Ex. A at 9.) In addition, the letter accompanying the Separation Agreement informed the Plaintiff that he had forty-five days from the date of receipt to sign the Separation Agreement and receive the severance payment. (Am. Compl. Ex. A at 2.)

Prior to signing the Separation Agreement, the Plaintiff consulted with his attorney. (Am. Compl. ¶ 17.) On January 3, 2011, the Plaintiff sent the Defendant a letter requesting a "detailed accounting on the compensation, including commission, it plans on paying Mr. Bulford." (Am. Compl. Ex. B.) The letter stated that "it is impossible to make an informed decision on whether the release should be signed prior to obtaining an accounting regarding how much Verizon believes they owe Mr. Bulford." (Am. Compl. Ex. B.) Specifically, the Plaintiff was interested in commission payments relating to two contracts he helped Verizon secure in November 2010. First, the Plaintiff claims that he helped Verizon secure a contract with Roberts Communication's Network worth "$8.1 million dollar[s]." (Am. Compl. ¶ 10.) Second, the Plaintiff claims that he helped Verizon secure a "multi-million dollar master contract" with Norfolk Southern. (Am. Compl. ¶ 14.)

By letter dated January 14, 2011, the Defendant responded to the Plaintiff's inquiry ("January Letter"). (Am. Compl. ¶ 18, Ex. C.) The January Letter stated, in relevant part:

> In terms of whether there are any additional Advances [advances of unearned commissions] that may be due to Mr. Bulford, it is possible that Mr. Bulford may be eligible for Advances relating to his November 2010 and December 2010 performance months. Sales compensation payments, however, for November and December performance awards have not yet been calculated and finalized. Calculation of Advances relating to the November performance month will not be finalized until next week. Calculations of Advances relating to the December performance month will not be finalized until mid-February. Because Mr. Bulford was notified of his job elimination by reduction-in-force in December, a special RIF provision applies with respect to the calculation of Advances that may be due to Mr. Bulford for December. Specifically, Mr. Bulford is entitled to a "Notification Month Advance" for December.
> . . .
> Any Notification Month Advance due to Mr. Bulford will be paid in February in accordance with the terms and conditions of the Program. Once the November and December Advance calculations are finalized, I will forward to you Mr. Bulford's sales compensation accounting statements relating to those two months.

(Am. Compl. Ex. C.) Despite not receiving the accountings requested, the Plaintiff signed the Separation Agreement on January 21, 2011. (Am. Compl. ¶ 22.) Directly above the Plaintiff's signature on the Separation Agreement was the admission: "I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS RELEASE, FULLY UNDERSTAND WHAT THIS RELEASE MEANS, AND AM SIGNING THIS RELEASE KNOWINGLY AND VOLUNTARILY." (Am. Compl. Ex. A at 9.)

After the Separation Agreement was executed, the Plaintiff received the severance payment specified in the Separation Agreement. (Am. Compl. ¶ 29.) He also received two commission payments not called for by the Separation Agreement.

(Am. Compl. ¶¶ 30-31.) Specifically, he received a commission payment of $22,700.22 on February 8, 2011, and a commission payment of $1,437.63 on March 3, 2011. (Am. Compl. ¶¶ 30-31.) No further payments were made.

The Plaintiff alleges that he is entitled to commissions amounting to at least $300,000, and that the Defendant's failure to pay this amount constitutes a breach of contract. (Am. Compl. ¶ 34.) The Plaintiff also alleges that he was fraudulently induced into signing the Separation Agreement by the representations found in the January Letter. (Am. Compl. ¶¶ 36-37.) In addition, the Plaintiff seeks punitive damages and attorney's fees.

## II. Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989,

994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S.Ct. at 1964).

"[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1368 (11th Cir. 1997). A contract attached as an exhibit to a pleading may be considered part of that pleading. Homart Development Co. v. Sigman, 868 F.2d 1556, 1562 (11th Cir. 1989) ("Since the contract is part of the pleadings, it follows that the court's judgment was made on the pleadings."). Even for documents not attached to the pleading, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." Brooks, 116 F.3d at

1369. Here, the Plaintiff attached the full text of the Separation Agreement and the January Letter to his complaint. The Court will consider both in evaluating the motion to dismiss.

### III. Discussion

The analysis begins with what the Plaintiff is not seeking. The Plaintiff is not seeking rescission of the Separation Agreement.[1] The Plaintiff is not alleging that the text of the Separation Agreement is ambiguous. The Plaintiff is not denying that the Claim Release encompasses his contract claim. Finally, the Plaintiff is not alleging that there is a fraudulent misrepresentation found within the text of the Separation Agreement itself. With this, the Court first looks to the Plaintiff's fraud claim. The Court then turns to the Plaintiff's contract claim, along with the associated punitive damages and attorney's fees claims.

---

[1] In fact, the Plaintiff is unable to seek rescission. According to recent authority from the Georgia Supreme Court, "where a party elects to rescind the contract, he must do so prior to filing the lawsuit." Novare Group, 290 Ga. at 188. "[T]he rule requiring one who seeks the rescission of a contract on the ground of fraud to restore, or offer to restore, the consideration received, as a condition precedent to bringing the action, is settled in this State." Id. (citing Williams v. Fouche, 157 Ga. 227, 228-29 (1924)). The Plaintiff has not claimed that he attempted rescission prior to filing suit, and so he is unable to seek rescission here.

A.  Fraud

Under Georgia law, "[w]here a purchaser affirms a contract that contains a merger or disclaimer provision, he is estopped from asserting reliance on a representation that is not part of the contract." Novare Group, Inc. v. Sarif, 290 Ga. 186, 190 (2011); see also Ekeledo v. Amporful, 281 Ga. 817 (2007) ("[W]here the allegedly defrauded party affirms a contract which contains a merger or disclaimer provision and retains the benefits, he is estopped from asserting that he relied upon the other party's misrepresentation and his action for fraud must fail.") (internal quotation marks omitted); Arieso, Inc. v. Rhamani, 397 Fed. Appx. 570, 571 (11th Cir. 2010) ("Under Georgia law, if a contract contains a merger clause that specifically bars reliance on any representations not set forth in the contract, the party claiming fraud is barred from reliance on any other representations."). Furthermore, "[j]ustifiable reliance is an essential element of . . . fraud . . . claims." Novare Group, 290 Ga. at 190. Thus, if a plaintiff is only alleging reliance on representations outside of a contract containing a merger clause, his "fraud . . . claims fail, even construing the pleadings most favorably" to him. Id.

Here, since the Plaintiff "did not properly elect rescission as a remedy," he is "bound by the terms" of the Separation Agreement. See id. This includes its merger clause, stating in relevant part:

> No promises or representations have been made to me other than those in this Release. In deciding to sign this Release, I have not relied on any statement by anyone associated with Verizon that is not contained in this Release.

(Am. Compl. Ex. A at 9.) The Plaintiff's fraud claim only relates to statements made in the January Letter.[2] (Compl. ¶¶ 36-37.) The Plaintiff "did not allege that there was any fraud within the [Separation Agreement], and thus, [he has] failed to state a claim." Hall v. Coram Healthcare Corp., 157 F.3d 1286, 1289 (11th Cir. 1998). The Plaintiff's claim for fraud should be dismissed.

   B.  Breach of Contract

As a matter of law, the Separation Agreement precludes the breach of contract claim for two reasons. First, the merger clause extinguishes any claim for commissions based on a promise or agreement that predates the Separation Agreement. "The rational basis for merger clauses is that where parties enter into a final contract all prior negotiations, understandings, and agreements on the same subject are merged into the final contract, and are accordingly extinguished." First Data POS, Inc. v. Willis, 273 Ga. 792, 795 (2001). "Under the merger rule, '[a]n

---

[2] The case cited by the Plaintiff, Woodhull Corporation v. Saibaba Corporation, 234 Ga. App. 707 (1998), supports the Defendant's argument. In that case, the court said, "false representations that induce the party to enter into the contract are merged through the contract merger language," but if the "misrepresentations were made as *part of the contract*, there was no merger." Id. at 711-12 (emphasis added).

existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract.'"[3] <u>Atlanta Integrity Mortgage, Inc. v. Ben Hill United Methodist Church, Inc.</u>, 286 Ga. App. 795, 797 (2007).  Here, the merger clause makes clear that the Separation Agreement is the "entire agreement" between the Defendant and the Plaintiff relating to the Plaintiff's "employment and [] separation from employment, and [] entitlement to any benefits relating to [the Plaintiff's] employment and [] separation from employment." (Am. Compl. Ex. A at 9.) The Separation Agreement, in its text, makes no reference to the commission payments. In fact, the Plaintiff admits that the Entitlement Section limits his compensation to the severance payment therein. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 7.) To the extent that there even was an enforceable promise or agreement for commissions, it is extinguished by the Separation Agreement.[4]

---

[3] However, the latter agreement need not be functionally incompatible with the earlier agreement in order to extinguish it. The question is if the latter agreement was intended to be an exhaustive agreement regarding the subject matter. See <u>Health Serv. Ctrs. v. Boddy</u>, 257 Ga. 378, 380 (1987) ("The issue is not, however, whether as a matter of law an option to purchase may legally co-exist with a right of first refusal in the same or successive agreements. The issue . . . is whether the parties intended for the right of first refusal, together with the merger clause . . to supersede the option to purchase contract.").

[4] It makes no difference, as the Plaintiff suggests, that the prior agreement was written rather than oral. In <u>Boddy</u>, the Georgia Supreme Court concluded that a prior,

Second, even if there was an enforceable agreement for commissions that is not extinguished by the merger clause, any claim based on it is forfeited by the Claim Release provisions in the Separation Agreement. The Plaintiff never challenges that his contract claim falls under the broad terms of the Claim Release. Thus, the continued validity of the Claim Release "leads to the ineluctable conclusion that the claims raised by" the Plaintiff "are barred by the release[]." Kobatake v. E.I. Dupont de Nemours & Co., 162 F.3d 619, 627 (11th Cir. 1998).

The Plaintiff advances two theories in order to salvage his contract claim. Each one will be discussed.  The Plaintiff suggests that the January Letter can be read as part of the Separation Agreement itself. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 4-7.) Neither this proposition, nor the arguments in support, assumes the existence of a comprehensive merger clause.  According to O.C.G.A. § 13-2-2(1), "[p]arol evidence is inadmissible to add to, take from, or vary a written contract.. . .if only a part of a contract is reduced to writing (such as a note given in pursuance of a contract) and it is manifest that the writing was not intended to speak the whole contract, then parol evidence is admissible." "The purpose of merger clauses is to preclude any unilateral modifications of a written contract through evidence of

---

written option contract was extinguished by a later contract covering the same subject matter and including a comprehensive merger clause. Boddy, 257 Ga. at 380.

pre-existing terms that were not incorporated into the written contract." Rome Healthcare LLC v. Peach Healthcare System, Inc., 264 Ga. App. 265, 271 (2003). "Where parties have reduced to writing a complete and certain agreement, the court will, in the absence of fraud, mistake, or accident, conclusively presume that the writing contains the entire contract, and parol evidence of prior or contemporaneous representations or statements is inadmissible to add to . . . a written contract." Id. at 271-72. Here, the merger clause states that the Separation Agreement is the entire agreement regarding the Plaintiff's employment and termination.

The Plaintiff argues, however, that because the January Letter and the Separation Agreement were executed contemporaneously, they can be read as one contract. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 5-7.) The Plaintiff cites O.C.G.A. 24-6-3(a): "[a]ll contemporaneous writings shall be admissible to explain each other." The fact that contemporaneous writings may be used to explain ambiguities in each other does not mean that they become one contract. Concluding otherwise here would be inconsistent with Georgia law regarding merger clauses, as well as the parol evidence restriction in O.C.G.A. § 13-2-2(1). The Plaintiff cites Baker v. Jellibeans, Inc., 252 Ga. 458 (1984) in support. In that case, the Georgia Supreme Court indicated that contemporaneous agreements would be considered despite an "entire agreement" clause because they were being used to explain

ambiguities in the contract. Id. at 459. Here, the Plaintiff is not trying to explain an ambiguity in the Separation Agreement. He is trying to add to it.

The Plaintiff also argues that the January Letter references the Separation Agreement and thus incorporates it. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 5.) This is immaterial. The question is if the Separation Agreement references the January Letter. It does not. Finally, the Plaintiff argues that the January Letter evinces the true intent of the parties, and that this shapes how the Separation Agreement ought to be constructed. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 4-5.) The Plaintiff is correct that when interpreting a contract under Georgia law, "[i]t is axiomatic that contracts must be construed to give effect to the parties' intentions." First Data POS, 273 Ga. at 794. However, "[w]henever the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning." Id.; see also Boddy, 257 Ga. at 380 ("Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties."). The Plaintiff points to no ambiguous provision in the Separation Agreement that could plausibly be interpreted to include the contents of the January Letter.

The Plaintiff's second theory for why the Separation Agreement does not preclude his contract claim is that the Defendant waived the part of the Entitlement Section that states the Plaintiff is owed nothing outside of the severance benefits. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 7-8.) Relying on O.C.G.A. § 13-4-4, the Plaintiff argues that this provision was waived when the Defendant made two partial commission payments subsequent to the execution of the Separation Agreement. O.C.G.A. § 13-4-4, which codifies the mutual departure doctrine, reads:

> Where the parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

In addition, § 13-4-4 makes clear that "the effect of a quasi-new agreement resulting from a mutual departure from the terms of a contract is not to extinguish the original contract altogether but merely to suspend those terms departed from until 'reasonable notice [is] given . . . of [an] intention to rely on the exact terms of the agreement.'" Father & Son Moving & Storage Co. of Georgia v. Peachtree Airport Park Joint Venture, 229 Ga. App. 860 (1997) (citing American Iron & Co. v. Nat'l Cylinder Gas Co., 105 Ga. App. 458, 462 (1962)). Consequently, a mutual departure does not re-write the contract, but only imposes a notice requirement on parties seeking recovery based on the original wording.

This does not help the Plaintiff. First, waiver of part of the Entitlement Section does not eliminate the effect of the merger clause. See Southwest Plaster & Co. v. RS Armstrong & Bros. Co., 166 Ga. App. 373, 374 (1983) ("A mutual departure from one contract term, however, does not affect the enforceability of the other contractual provisions."). Even with a waiver, the Separation Agreement would still make no mention of commission payments. As noted, a waiver does not re-write the contract. Thus, the comprehensive merger clause still extinguishes prior agreements suggesting that the Plaintiff is owed commission payments.

Second, the Plaintiff has not alleged that the Defendant waived the Claim Release. Whether the Plaintiff was owed commissions and whether the Plaintiff may seek a judicial remedy for commissions owed are two separate issues. The Plaintiff's claim for breach of contract should be dismissed. The Plaintiff's claims for punitive damages and attorney's fees are predicated on his claims for fraud and breach of contract. Having no independent basis, they must be dismissed for failure to state a claim.

## IV. Conclusion

For the reasons set forth above, the Defendant's Motion to Dismiss the Plaintiff's Amended Complaint [Doc. 9] is GRANTED.

SO ORDERED, this 4 day of September, 2013.


                                        /s/Thomas W. Thrash
                                        THOMAS W. THRASH, JR.
                                        United States District Judge